Austin D. Huff, Esq., ISB #11691
ATAMANCZYK LEGAL GROUP, PLLC
dba Idaho Consumer Law Firm
P.O. Box 149
Soda Springs, ID 83276
Telephone: (208) 922-7722
austin.alg1@gmail.com

*Attorney for Plaintiff*

IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| BENNY BURNS,<br><br>              Plaintiff,<br><br>       vs.<br><br>KOUDELKA TRANSPORT LLC, an Idaho limited liability corporation; JEFFREY KOUDELKA, an individual; JAYCE KOUDELKA, an individual; PROGRESSIVE CASUALTY INSURANCE COMPANY, a foreign insurance company; DOE DEFENDANTS I-X, inclusive;<br><br>              Defendants. | Case No. _____<br><br>**COMPLAINT**<br><br>Fee Category: A.A.<br>Fee Amount:  $402 |

Plaintiff Benny Burns, by and through his attorney, Austin D. Huff, Esq. of Atamanczyk Legal Group, PLLC, alleges and complains as follows:

### PARTIES

1. Plaintiff is an individual residing in Missoula County, Montana. Plaintiff is a self-employed long-haul trucker who requires ownership of a reliable vehicle in order to make his livelihood.

2. Federal Courts have recognized that diesel engines emit, "nitrous oxides ("NOx"), non-methane hydrocarbons, and particulate matter ("PM"), all of which are harmful

to the environment and human health." *National Petrochemical & Refiners Ass'n v. E.P.A.*, 287 F.3d 1130, 1134 (D.C. Cir. 2002). The EPA has also recognized that diesel emissions can lead to serious health problems, such as "asthma and respiratory illnesses, and can worsen existing heart and lung disease, especially in children and the elderly." *Impacts of Diesel Emissions*, https://www.epa.gov/dera/learn-about-impacts-diesel-exhaust-and-diesel-emissions-reduction-act-dera#impact.

3. Plaintiff's occupation requires him to face routine exposure to diesel emissions. Plaintiff's age and occupation cause him to be particularly susceptible to the negative health effects caused by respirable particulate matter from diesel exhaust.

4. Defendant Koudelka Transport LLC (Koudelka) is an Idaho limited liability corporation doing business in Blaine County, Idaho, which company is in the business of auto sales and repair. Koudelka Transport LLC has engaged in the activities alleged in this Complaint to be violations of the Clean Air Act (CAA), the Federal Odometer Law (FOL), and numerous Idaho state laws.

5. Defendant Jeffrey Koudelka is listed with the State of Idaho, Office of the Secretary of State, as a governor of Koudelka Transport LLC and is engaged in repairing and selling semi-trucks. Jeffrey Koudelka resides in Carey, Idaho, and has engaged, individually and separately from his role with Koudelka Transport LLC, in the activities alleged in this complaint to be violations of the CAA, the FOL, and numerous Idaho state laws.

6. Defendant Jayce Koudelka is believed to be a manager of Koudelka Transport LLC, and is engaged in repairing and selling semi-trucks. Jayce Koudelka resides

in Ketchum, Idaho and has engaged, individually and separately from his role with Koudelka Transport LLC, in the activities alleged in this complaint to be violations of the CAA, the FOL, and numerous Idaho state laws.

7. Defendant Progressive Casualty Insurance Company ("Progressive") is a foreign insurance company which does business throughout Idaho. Progressive routinely sells salvage vehicles at auction in and around Boise, Idaho. Progressive has engaged in activities alleged in this complaint to be violations of the FOL.

8. The true names and capacities of Doe Defendants I through X, inclusive, ("Doe Defendants") are unknown to Plaintiff, who therefore sues said Doe Defendants by such fictitious names. Plaintiff is informed and believes and thereon alleges that each of the Doe Defendants may be legally responsible in some manner for the events and happenings herein referred. Plaintiff will seek leave of the Court to amend this Complaint to insert the true names and capacities of such Doe Defendants upon ascertaining the identity of such Doe Defendants.

## JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction over the claims set forth in this complaint under 42 U.S.C. § 7604(a) (citizen suit provision of the CAA), 49 U.S.C. § 32710(b) (citizen suit provision of the FOL), 28 U.S.C. § 1331 (federal question statute), and 28 U.S.C. § 1355 (recovery of penalties).

10. This Court has personal jurisdiction over the Defendants in this action because the Defendants have transacted business within the State of Idaho, own and operate businesses within the State of Idaho, and have committed acts within the State of Idaho that have caused harm to the Plaintiff and to the citizens of Idaho.

11. Venue is proper in the District of Idaho pursuant to 28 U.S.C. §§ 1391(b) and (c) because the actions giving rise to these claims all took place in Idaho and a majority of Defendants reside in Idaho.

12. To the extent required by CAA Section 304(b)(1)(A), 42 U.S.C. § 7604(b)(1)(A), on October 19, 2021. Plaintiff notified in writing by certified mail the Administrator of the EPA. In accordance with 40 CFR Part 54.2 Plaintiff notified in writing by certified mail the Governor of Idaho, the Idaho Department of Environmental Quality ("IDEQ"), and the Defendants of the alleged violations set forth in this Complaint and Plaintiff's intent to sue. A true and accurate copy of Plaintiff's October 19, 2021 notice letter is attached hereto as **Exhibit 1**.

## GENERAL ALLEGATIONS

13. On or around June 16, 2021, Defendants Jeffrey Koudelka, Jayce Koudelka, and Koudelka Transport LLC (together the "Koudelkas") placed an advertisement on a used vehicle website, advertising a 2013 Freightliner Cascadia 125 semi-truck. The advertisement stated that the truck had 259,000 miles and a cost of $56,000. A true and correct copy of the advertisement is attached hereto as **Exhibit 2**.

14. On or around June 17, 2021, Plaintiff Burns responded to the advertisement by calling the Koudelkas at the phone number listed on the advertisement. Plaintiff Burns stated that he required the vehicle for use in his career as a long-haul trucker and that the vehicle would need to be suitable for this purpose.

15. The Koudelkas made numerous guarantees to Plaintiff, including that the mileage listed in the advertisement was true and accurate, and that the truck was capable of use in the long-haul trucking industry.

16. Throughout the course of negotiations between Plaintiff Burns and the Koudelkas, the Koudelkas never mentioned that they had made modifications to the vehicle intended to bypass and defeat the vehicle's emissions limitation systems.

17. Plaintiff Burns was living in Missoula, Montana during the period in which the negotiations between the parties took place. Plaintiff Burns was therefore unable to perform any physical inspections of the truck during this time.

18. On or around June 18, 2021, Plaintiff Burns travelled approximately 5 hours to Carey, Idaho to meet the Defendants at Koudelka Transport LLC's place of business. This was Plaintiff Burns' first opportunity to see the vehicle in person.

19. The Koudelkas restated their guarantees of the physical condition and the mileage of the vehicle. The Koudelkas also stated they had replaced all the front-end parts of the hood, fenders, the front axle, side panels, and both fuel tanks.

20. The Koudelkas then stated, for the first time since negotiations had begun, that the vehicle had been in an accident and was a salvage title.

21. The Koudelkas did not tell Plaintiff Burns about the salvage title until after he had invested a large amount of time and money into a potential purchase of the vehicle.

22. Plaintiff Burns performed a general inspection of the vehicle and raised further questions about the mileage of the vehicle.

23. The Engine Control Module (ECM) showed a mileage of 500,000 plus. The Koudelkas claimed this was because the ECM was missing when they purchased the vehicle, so they replaced it with a used ECM.

24. The Koudelkas again guaranteed the true mileage of the vehicle was 259,000.

25. To support this claim, the Koudelkas showed Plaintiff Burns the bills of sale from previous owners, including the bill of sale from Progressive to MK Trailer.

26. The bill of sale from Progressive to MK Trailer included the following statement: "I state that the odometer now reads 259431 (no tenths) miles and to the best of my knowledge that reflects the ACTUAL of the vehicle described above, UNLESS one of the following statements is checked." Neither of the conditional following statements were checked, and the above statement was signed by Sandy Doerr as an agent of Progressive. A true and correct copy of the bill of sale is attached hereto as **Exhibit 3**.

27. Plaintiff Burns then agreed to purchase the vehicle for the price of $50,000.00 plus the $6,000.00 trade-in value of Plaintiff's 2008 Volvo semi-truck.

28. Plaintiff Burns immediately began the process of wiring the funds to Koudelka Transport LLC's bank account.

29. Plaintiff Burns also immediately began the process of transferring the registration.

30. Jeffrey Koudelka signed the Assignment of Title in his individual capacity to Plaintiff Burns. A true and correct copy of the Assignment of Title is attached hereto as **Exhibit 4**.

31. After the funds had arrived in Koudelka's bank account, Jayce Koudelka stated for the first time that they had replaced the Regeneration Box, and altered the DEF system in order to bypass certain systems that are required by law in order to limit the vehicle's emissions.

32. Jayce Koudelka also stated that a computer program had been used to allow the ECM to work with the systems Defendants had illegally altered.

33. Jayce Koudelka stated that they routinely make similar changes in the trucks they sell because their clients prefer trucks which have had the emissions limitation systems removed.

34. The alterations and equipment changes made by the Koudelkas are in violation of numerous sections of the Clean Air Act, and the Idaho Department of Environmental Quality administrative rules.

35. The illegal alterations significantly diminished the value of the vehicle to Plaintiff Burns by, among other reasons:

    a. diminishing the resale value of the vehicle;

    b. potentially exposing Plaintiff Burns to legal liability through his ownership and operation of the vehicle, and;

    c. by exposing Plaintiff Burns and the general public to heightened health risks caused by the vehicle's increased emissions levels.

36. Upon hearing Jayce Koudelka's statements concerning the alterations made to the vehicle, Plaintiff Burns immediately informed him of his intention and desire to revoke his purchase of the vehicle, or to instead receive a vehicle with intact and functioning emissions systems.

37. Jayce Koudelka stated he would look to see if they had any legally compliant engines that could be installed in the vehicle. After reviewing his inventory Jayce Koudelka stated that all the engines they currently had available had been modified using the same illegal methods.

38. Jayce Koudelka, stated that he would need to discuss the situation with Jeffrey Koudelka before he could agree to return Plaintiff's money, but he then left the area of the vehicle sale without any further discussion.

39. Plaintiff Burns immediately began attempting to contact Jeffrey Koudelka to notify him of his revocation of the sale. Jeffrey Koudelka ignored all of Plaintiff's phone calls.

40. Plaintiff Burns left the Koudelkas voicemails stating that he was revoking his purchase of the vehicle and that he would wait in Carey, Idaho over the weekend so that they could meet again and undo the purchase.

41. Plaintiff Burns waited in Carey, Idaho for around three days and attempted to contact the Koudelkas throughout that time. The Koudelkas never answered Plaintiff Burn's calls and voicemails.

42. On or around June 22, 2021, the Koudelkas finally responded to Plaintiff Burn's phone calls, but refused to take the vehicle back and refund the Plaintiff.

43. Since the sale, Plaintiff Burns has obtained documents showing previous owners of the vehicle had registered the mileage of the vehicle at 338,647 on December 16, 2015 and 362,129 on February 19, 2016.

44. Plaintiff Burns has also discussed the vehicle with another previous owner who stated that the vehicle had 450,000 to 460,000 miles while he owned it.

45. Plaintiff Burns has had to make numerous repairs to the vehicle which would not have been required if the vehicle's actual mileage was 259,000.

46. Plaintiff Burns has made numerous repairs to replace the emissions equipment necessary to make the truck comply with federal and state standards.

47. Plaintiff Burns requires the use of this vehicle for his career as a long-haul trucker. Plaintiff Burns missed numerous weeks of work and the wages he would have earned while attempting to repair the defects the Koudelkas caused and hid from him.

48. The Koudelkas have continued refusing to undo the sale of the vehicle.

49. Plaintiff continues to suffer monetary damages and damages to his career due to the unlawful behavior of Defendants.

### FIRST CAUSE OF ACTION
**(Against the Koudelkas)**
**Violation of the Idaho Consumer Protection Act (Idaho Code Title 48 Chapter 6)**

50. Plaintiff repeats and realleges the foregoing paragraphs as though set forth fully herein.

51. The Koudelkas are all "Persons" in "Trade" as defined by Idaho Code 48-602.

52. The Koudelkas engaged in unlawful, unfair, or deceptive acts in their dealings with Plaintiff Burns in violation of Idaho law in at least the following ways:

    a. Causing the likelihood of confusion or of misunderstanding concerning the vehicle's mileage, the vehicle's quality, and the number and quality of repairs made to the vehicle;

    b. Causing the likelihood of confusion or of misunderstanding regarding the legal status of the vehicle, and the fact that the vehicle had a salvage title;

    c. Representing that the vehicle was in good working condition when in fact the vehicle required major repairs before it could be used for long-distance driving;

COMPLAINT - 9

d. Making false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions;

e. Making false or misleading statements of fact concerning the age, extent of use, or mileage of any goods; and

f. Failing to comply with any statute or rule that identifies conduct in trade and commerce as unfair or deceptive or a violation of the Act.

53. As a result of the Koudelka's conduct, Plaintiff Burns has incurred ascertainable losses.

54. **Under Idaho Code 48-608(1)**, Plaintiff Burns is entitled to treat any agreement incident thereto as voidable, or, in the alternative, may bring an action to recover actual damages or one thousand dollars ($1,000), whichever is the greater. Plaintiff Burns is also entitled to restitution, to an order enjoining the Koudelkas from the employment of similar conduct, to punitive damages, and to any other relief as the Court deems just and necessary.

55. In this case, Plaintiff Burns has incurred the following actual damages due to Defendant's violation of I.C. Title 48 Chapter 6:

   a. Repairs to vehicle            $30,000.00
   b. Lost wages                    $36,000.00

56. Under Idaho Code 48-608(5), the Idaho legislature has mandated that Idaho Courts "shall" award reasonable attorney's fees and costs to a prevailing consumer. Plaintiff Burns is therefore entitled to recover his costs and reasonable attorney's fees from the Koudelkas.

57. Plaintiff has asserted this action based on his good-faith belief that the violations asserted in this cause of action have occurred and that he is entitled to the relief requested. This action is not brought to harass the Koudelkas.

**SECOND CAUSE OF ACTION**
**(Against All Defendants)**
**Odometer Violation (Idaho Code 49-1629)**

58. Plaintiff repeats and realleges the foregoing paragraphs as though set forth fully herein.

59. Defendants are all "Persons" as defined by Idaho Code 49-117(7)(a).

60. Defendants had knowledge, or had reason to believe, that the odometer had been turned back or replaced on the subject vehicle.

61. Specifically, all Defendants knew the vehicle had extensive replacement parts which may be showing a false mileage.

62. Further, all Defendants work extensively with vehicles such as the semi-truck at issue in this case. All Defendants have knowledge of how such a vehicle is used in the long-haul trucking business, and all Defendants would have known that 259,000 miles is extremely low miles for a 2013 semi-truck that had been used in the long-haul trucking business.

63. Considering the age of the vehicle, the vehicle's usage in the long-haul trucking industry, the history of repairs and alterations to the vehicle, and the Defendants' familiarity with semi-trucks and the trucking industry, the Defendants had knowledge or had reason to believe that the vehicle's odometer showed a lower mileage than the true mileage of the vehicle.

64. Despite Defendants' knowledge of the mileage discrepancies, the Koudelkas still made verbal guarantees certifying an incorrect odometer mileage, and they caused the incorrect mileage to be placed upon the Certificate of Title. Defendant Progressive made a signed statement on the Bill of Sale, certifying the incorrect odometer mileage.

65. Plaintiff Burns has suffered damages proximately caused by Defendants' violation of Idaho Code 49-1629. Pursuant to Idaho Code 49-1629 and 49-1630, Plaintiff is entitled to the following damages:

    a. The repairs to the vehicle and the lost wages addressed in the first cause of action, and

    b. The reimbursement of the $50,000 payment and $6,000.00 value of the trade in.

### THIRD CAUSE OF ACTION
**(Against the Koudelkas)**
**Fraud**

66. Plaintiff Burns repeats and realleges the foregoing paragraphs as though set forth fully herein.

67. In order to induce the sale, the Koudelkas represented that the vehicle would be suitable for Plaintiff's use in long-haul trucking.

68. The Koudelkas also represented that the vehicle had a total of 259,000 miles.

69. At the time of making these representations, the Koudelkas knew they were false, or they made the representations while unaware of whether the statement was true.

70. The Koudelkas made these statements with the intent of inducing Plaintiff Burns to purchase the vehicle.

71. The Koudelka's representations concerning the quality of the vehicle, and the mileage of the truck being 259,000, were proven to be false by their own statements and by documents discovered after Plaintiff's purchase.

72. The Koudelka's false statements were material to Plaintiff Burns' decision to purchase the vehicle.

73. Plaintiff Burns did not know the Koudelka's statements were false at the time of his purchase of the vehicle.

74. Plaintiff Burn's reliance on the Koudelka's statements was reasonable under all the circumstances, especially since Defendants insisted on their statements being true.

75. Idaho Courts have long recognized that, where an agreement was induced by fraudulent behavior, no contract has been formed. *Utilities Eng'g Inst. v. Criddle*, 65 Idaho 201, 209, 141 P.2d 981, 985 (1943).

76. The Koudelkas have refused Plaintiff Burn's numerous requests to return his money and accept a return on the vehicle.

77. Plaintiff Burns suffered damages proximately caused by the Koudelka's fraudulent behavior in an amount as illustrated in other parts of this complaint.

### FOURTH CAUSE OF ACTION
**(Against the Koudelkas)**
**Revocation (Idaho Code 28-2-608)**

78. Plaintiff Burns repeats and realleges the foregoing paragraphs as though set forth fully herein.

79. Plaintiff Burns was unable to inspect whether the emissions systems had been altered in the vehicle. Plaintiff Burns was also unable to ascertain the true mileage of the vehicle prior to his purchase of the vehicle.

80. Rather, Plaintiff Burns was induced to purchase the vehicle based in substantial part on representations by the Koudelkas that the vehicle was in good condition, was suitable for long-haul trucking, and had a mileage of 259,000.

81. The nonconformities substantially impaired the value of the vehicle to Plaintiff Burns, which is subjective under Idaho law.

82. Plaintiff Burns notified the Koudelkas of his revocation within a reasonable time after he discovered the defects and illegalities in the vehicle.

83. The Koudelkas have refused or failed to recognize and honor the revocation.

84. The revocation was justifiable under the circumstances.

85. Plaintiff Burns is therefore entitled to a declaratory order that his oral and written notifications effectively revoked acceptance of the vehicle.

## FIFTH CAUSE OF ACTION
### (Against the Koudelkas)
### Violation of Implied Warranty of Merchantability (Idaho Code 28-2-314)

86. Plaintiff Burns repeats and realleges the foregoing paragraphs as though set forth fully herein.

87. The Koudelkas are sellers of long-haul semi-trucks, and as such, a warranty that the vehicle at issue would be merchantable was implied in the contract for sale of the vehicle.

88. The vehicle at issue does not comply with numerous federal requirements, and therefore is not a merchantable long-haul semi-truck.

89. The modifications that the Koudelkas made on the vehicle would prevent this vehicle from passing without objection under the contract description.

90. The modifications that the Koudelkas made on the vehicle make it unfit for the ordinary purposes for which such a vehicle is used.

91. Plaintiff Burns has suffered incidental damages associated with effecting cover for the Koudelka's breach of the contract.

92. Plaintiff Burns has suffered consequential damages stemming from his inability to legally accept work as a long-haul trucker using the vehicle at issue. The Koudelkas had reason to know at the time of contracting that Plaintiff Burns required the vehicle for use at his job.

### SIXTH CAUSE OF ACTION
(Against the Koudelkas)
Violation of Clean Air Act CAA Section 203(a)(3)(A), 42 U.S.C. § 7522(a)(3)(A), and 40 C.F.R. § 86.1854-12(a)(3)(i)

93. Plaintiff repeats and realleges the foregoing paragraphs as though set forth fully herein.

94. The Koudelkas are all "persons" within the meaning of CAA Section 302(e), 42 U.S.C. § 7602(e).

95. CAA Section 203(a)(3)(A), 42 U.S.C. § 7522(a)(3)(A), prohibits any person from knowingly removing or rendering inoperative "any device or element of design installed on or in a vehicle or engine in compliance with regulations under this subpart prior to its sale and delivery to the ultimate purchaser, or for any person knowingly to remove or render inoperative any such device or element of design after such sale and delivery to the ultimate purchaser."

96. The Koudelkas violated this prohibition by removing and altering certain EPA mandated emissions limitation systems from the vehicle at issue in this lawsuit.

97. The Koudelkas made certain statements admitting that their business made a regular practice of removing and modifying these federally required emissions systems because their clientele generally prefers to purchase such vehicles.

98. Pursuant to 42 U.S. Code § 7524, the Koudelkas are liable for a civil penalty of up to $5,179 for each such violation occurring on or after November 2, 2015. (*See*, 40 CFR § 19.4 - Statutory civil monetary penalties, as adjusted for inflation, and tables.)

99. Pursuant to 42 U.S. Code § 7604, the Court may award costs of litigation (including reasonable attorney and expert witness fees) to Plaintiff.

### SEVENTH CAUSE OF ACTION
**(Against All Defendants)**
**Violation of the Federal Odometer Law**
**(49 U.S.C. § 32705)**

100. Plaintiff Burns repeats and realleges the foregoing paragraphs as though set forth fully herein.

101. Defendants have all "transferred" the vehicle at issue in this case, as defined by 49 U.S.C. § 32702.

102. In the course of these transfers, Defendants made and signed false statements concerning the odometer and mileage of the vehicle, all in violation of 49 U.S.C. § 32705.

103. As discussed above, all Defendants have extensive knowledge of semi-trucks, the trucking industry, and the repairs and alterations that had been made to the vehicle.

104. Courts have also concluded that reckless disregard for the truth of the mileage is enough to prove intent to defraud. See, *Tusa v. Omaha Auto. Auction, Inc.*, 712 F.2d 1248 (8th Cir.1983).

105. The Federal Courts have also found that privity between the plaintiff and defendant is not necessary. See, *Shaghoian v. Aghajani*, 228 F.Supp.2d 1107 (C.D. Cal. 2002).

106. Federal Courts have further held that when, "separate odometer statements were issued, each issuer is subject to separate and individual liability under the Act…" and that "Plaintiff may recover the statutory damages from each transferor in his chain of title who made false mileage statements with such intent." *Tate v. Grand Prix Motors, Inc.*, 3:15-CV-02157-PK, (D. Or. Jun. 22, 2016).

107. Pursuant to 49 U.S.C. § 32710, a person who makes false representations of a vehicle's milage is liable for $10,000, or three times the actual damages, whichever is greater. The statute also states that courts shall award costs and reasonable attorney's fees to plaintiffs when judgment is entered.

108. In passing the FOL, Congress explicitly found that an accurate odometer reading is necessary for buyers when "deciding on the safety and reliability of the vehicle." 18 U.S.C. § 32701(a)(3).

109. Because the Plaintiff requires a reliable vehicle to perform his job, and because the reliability of a semi-truck with a tampered odometer is impossible to gauge, the actual value of the subject vehicle to Plaintiff Burns is $0.00.

110. Plaintiff Burns purchase amount, including the trade-in value of his semi-truck, was $56,000.00. Plaintiff in entitled to damages in the amount of the purchase price,

multiplied by three, for a total of $168,000.00. Progressive and the Koudelkas are individually and separately liable for these damages.

## DEMAND FOR JURY TRIAL

111. Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff respectfully demands a jury trial of twelve citizens on all issues raised in this Complaint and triable of right by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief:

1. For judgment against the Koudelkas for the actual damages (both special and general) suffered by Plaintiff as a result of the ICPA violations, or, in the alternative, for an order voiding the transactions and for restitution.

2. For judgment against the Defendants enjoining them from engaging in conduct harmful to consumers;

3. For judgment against the Defendants for all damages made available by Idaho Code Title 28, Chapter 2, Part 7.

4. For judgment against the Koudelkas for the actual damages (both special and general) suffered by Plaintiff as a result of the actions and conduct of the Koudelkas as described above, in an amount to be at least:

    | | | |
    |---|---|---|
    | a. | Repairs | $30,000.00 |
    | b. | Lost Wages | $36,000.00 |
    | c. | Odometer Fraud Compensation – Koudelkas | <u>$168,000.00</u> |
    | | **TOTAL** | **$234,000.00** |

5. For judgment against Progressive for the damages suffered by Plaintiff as a result of Progressive's violation of state and federal odometer tampering laws as described above, in an amount to be at least $168,000.00.

6. For recission/revocation of the truck purchase transaction;

7. For civil penalties to be paid by the Koudelkas to the Federal treasury of up to $5,179 for each violation of 42 U.S.C. § 7522(a)(3)(A) occurring on or after November 2, 2015;

8. For a judgment against the Defendants for Plaintiff's costs and reasonable attorney's fees; and

9. For other such and additional relief as the Court deems just and equitable.

10. In the event of default judgment, Plaintiff will request damages, an order rescinding and voiding the transaction, attorney's fees to be taxed as costs in the amount of $11,000.00, and other litigation costs incurred.

DATED: June 10, 2022

*/s/ Austin D. Huff*
Austin D. Huff, Esq.
Idaho Bar No. 11691
*Attorney for Plaintiff*