UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| BENNY BURNS,<br><br>              Plaintiff,<br><br>v.<br><br>KOUDELKA TRANSPORT LLC, an Idaho limited liability corporation; JEFFREY KOUDELKA, an individual; JAYCE KOUDELKA, an individual; PROGRESSIVE CASUALTY INSURANCE COMPANY, a foreign insurance company; DOE DEFENDANTS I-X, inclusive,<br><br>              Defendants. | Case No. 1:22-cv-00247-CWD<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Pending before the Court are the following motions: Plaintiff's Motion for Summary Judgment; Defendants Koudelka Transport, LLC, Jeffrey Koudelka, and Jayce Koudelkas'[1] Motion for Partial Summary Judgment; Defendants' Motion to Strike; and, Plaintiff's Motion for Extension of Time. (Dkt. 47, 48, 51, 54.)

---

[1] Plaintiff settled with Defendant Progressive Casualty Insurance Company, and the matter was dismissed with prejudice as to Progressive only. (Dkt. 43.)

**MEMORANDUM DECISION AND ORDER - 1**

The parties have fully briefed the motions and they are ripe for the Court's consideration.[2] For the reasons discussed below, the Court will deny Plaintiff's motions and grant Defendants' motions.

## PROCEDURAL BACKGROUND

This matter arises from the June 18, 2021 sale by the Defendants ("Koudelka" or "The Koudelkas") of a 2013 Freightliner semi-truck to Burns.

Burns filed a complaint against the Koudelkas (and Progressive) on June 10, 2022, alleging seven causes of action: (1) violation of the Idaho Consumer Protection Act, Idaho Code § 48-608; (2) violation of Idaho Motor Vehicle Code Title 49, Section 1629 (Odometers); (3) fraud; (4) revocation pursuant to the Idaho Uniform Commercial Code, § 28-2-608; (5) breach of the implied warranty of merchantability, Idaho Code § 28-2-314; (6) violation of the Clean Air Act, 42 U.S.C. § 7522(a)(3)(A); and, (7) violation of the Federal Odometer Law, 49 U.S.C. § 32705. (Dkt. 1.) Following answers filed by the Koudelkas and Progressive, Progressive reached a settlement with Burns and the matter was dismissed as to Progressive. (Dkt. 42.)

The Court entered a scheduling order on September 20, 2022, requiring Plaintiff to disclose the experts intended to be called at trial by April 28, 2023; completion of fact discovery by June 30, 2023, and dispositive motions to be filed by November 30, 2023.

---

[2] Having fully reviewed the record herein, the Court finds that the facts and legal arguments are adequately presented in the briefs and record. All parties have consented to proceed before a United States Magistrate Judge to conduct all proceedings in this case. 28 U.S.C. § 636(c)(1). (Dkt. 24.) Accordingly, in the interest of avoiding delay, and because the Court conclusively finds that the decisional process would not be significantly aided by oral argument, the motions will be decided on the record before the Court. Dist. Idaho L. Rule 7.1(d).

**MEMORANDUM DECISION AND ORDER - 2**

(Dkt. 22.) The dispositive motion deadline was later extended to June 30, 2024. (Dkt. 41, 45.)

Burns filed a motion for summary judgment on June 28, 2024, with Exhibits A – I attached as separate documents. The motion was not accompanied by affidavits, declarations, or a separate statement of all material facts not in dispute. Dist. Idaho Loc. Civ. R. 7.1(b); Fed. R. Civ. P. 56(c). (Dkt. 47-1 – 47-9.) On July 2, 2024, Burns filed the declarations of Benny Burns and Dallas Henry, a copy of a bench trial order in Utah District Court Case No. 2:17-CV-0032-RJS-DBP captioned *Utah Physicians for a Healthy Environment v.. Diesel Power Gear, LLC, et al*., and copies of the remote deposition transcripts of Benny Burns and Jayce Koudelka, which were unaccompanied by a declaration of counsel. (Dkt. 49.) The Clerk issued a corrective entry, because these documents were filed incorrectly as a motion, and the Clerk directed Burns to re-submit the filing. Burns re-submitted the documents on July 5, 2024. (Dkt. 50.) Thereafter, the Koudelkas filed their motion to strike. (Dkt. 51.) The Koudelkas later filed a response to Burns's motion for summary judgment pointing out that Burns failed to comply with Dist. Idaho Loc. Civ. R. 7.1 and Fed. R. Civ. P. 56. (Dkt. 52.)

Burns next filed a motion for extension of time, a separate statement of undisputed material facts, and a reply in support of his motion for summary judgment. (Dkt. 54, 55, 56.) The statement of undisputed material facts is identical to the "Factual Summary" set

forth on pages 1 – 7 of Burns's motion for summary judgment. (Compare Dkt. 47 with 55.)[3]

The Koudelkas filed a motion for summary judgment on June 30, 2024. (Dkt. 48.) Burns responded, and re-submitted the declarations of Benny Burns and Dallas Henry, as well as Exhibits B – F that were previously filed in support of his own motion, again unaccompanied by a declaration or affidavit. (Compare Dkt. 53-2 – 53-8 with 47-2 – 47-6 and 50 – 50-1.)

Burns seeks summary judgment on the first, third, fourth, sixth, and seventh causes of action, and an award of damages in the amount of $456,000.00 for to the Federal Odometer Law violation, or in the alternative, $390,716.98 for to the Idaho Consumer Protection Act Violation, and attorney fees in an amount to be determined.

The Koudelkas seek partial summary judgment on the second through the seventh causes of action.

## STANDARD OF REVIEW

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court's role at summary judgment is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Zetwick v. Cnty. of Yolo*, 850 F.3d 436, 441 (9th Cir. 2017) (citation omitted). In

---

[3] Notably, the Clerk issued two more corrective entries. Burns filed his statement of undisputed material facts as a motion for more definite statement and, after being notified that no further action needed to be taken, again filed the statement as a motion to supplement, which the Clerk struck.

MEMORANDUM DECISION AND ORDER - 4

considering a motion for summary judgment, the Court must "view[ ] the facts in the non-moving party's favor." *Id*. To defeat a motion for summary judgment, the respondent need only present evidence upon which "a reasonable juror drawing all inferences in favor of the respondent could return a verdict in [his or her] favor." *Id*. (citation omitted).

Accordingly, the Court must enter summary judgment if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The non-moving party cannot simply rely on an unsworn affidavit or the pleadings to defeat a motion for summary judgment; rather, the responding party must set forth the "specific facts," supported by evidence, with "reasonable particularity" that precludes summary judgment. *Far Out Products., Inc. v. Oskar*, 247 F.3d 986, 997 (9th Cir. 2001).

When cross-motions for summary judgment are filed, the Court must "rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard." *Tulalip Tribes of Washington v. Washington*, 783 F.3d 1151, 1156 (9th Cir. 2015) (cleaned up). In doing so, it must independently search the record for factual disputes. *Fair Hous. Council of Riverside Cnty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001). The filing of cross-motions for summary judgment—where all parties essentially assert that there are no material factual disputes—does not end the Court's responsibility to determine whether disputes as to material facts are present. *Id*.

**MEMORANDUM DECISION AND ORDER - 5**

Rule 56 sets forth the mechanics of how to support a motion for summary judgment. A party must introduce affidavits or declarations, which "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). A party may object that material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence. Fed. R. Civ. P. 56(c)(2).

A party cannot defeat a motion for summary judgment by making conclusory statements without evidentiary support. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); *see also Hansen v. U.S.*, 7 F.3d 137, 138 (9th Cir. 1993) (recognizing "[w]hen the nonmoving party relies only on its own affidavits to oppose summary judgment, it cannot rely on conclusory allegations unsupported by factual data to create an issue of material fact"); *Steckl v. Motorola, Inc.*, 703 F.2d 392, 393 (9th Cir. 1983) (recognizing that the plaintiff's "mere assertions" that the defendant had a discriminatory intent were inadequate, without substantial factual evidence, to raise an issue to preclude summary judgment).

## ANALYSIS

**1.    Plaintiff's Motion for Summary Judgment**

Before the Court can reach the merits of Burns's motion for summary judgment, it must first consider the Koudelkas' motion to strike and Burns's motion for extension of time. Koudelka moves to strike Exhibits A - I, filed attached to Burns's motion (Dkt. 47-1 – 47-9); the declaration of Dallas Henry (Dkt. 49-1, 50-1); the declaration of Benny Burns (Dkt. 50); the bench trial order in Utah District Court Case No. 2:17-CV-0032-RJS-DBP captioned *Utah Physicians for a Healthy Environment v.. Diesel Power Gear, LLC*, *et al*. (Dkt. 50-2); and the remote deposition transcripts of Benny Burns and Jayce Koudelka (Dkt. 50-3, 50-4.)  Koudelka contends that the submissions do not comply with the requirements of Fed. R. Civ. P. 56(e), and were untimely submitted.

In response to Koudelkas' assertion that documents were untimely submitted, Burns filed a motion for extension of time. (Dkt. 54.) Koudelka argues Burns has failed to show good cause pursuant to Fed. R. Civ. P. 16(b), and provided no basis upon which to extend the dispositive motion and discovery deadlines to allow the late submissions. Burns did not file a reply or otherwise respond to Koudelkas' assertions.

### A.    *Burns Fails to Properly Support his Motion for Summary Judgment*

Burns has utterly failed to comply with Fed. R. Civ. P. 56 and the rules of evidence to support his motion for summary judgment. The "Factual Summary" set forth on pages 1 – 7 of Plaintiff's memorandum purports to set forth the "undisputed facts," and contains citations to Exhibits A – I as support for the statements made therein. (Dkt. 47.) Exhibits A – I were submitted as attachments to Burns's motion, unaccompanied by

any affidavit or declaration. (Dkt. 47-1 – 47-9.)[4] The only attempt to authenticate or

provide a foundation for the admissibility of Exhibits A – I are the statements in Benny

Burns's declaration, which contains the following four statements:

> 1. I am over 18 years of age, and competent to testify.
> 2. This declaration is based on my personal knowledge.
> 3. All the statements contained in the "Factual Summery"
> [sic] section of the Motion for Summary Judgment ("MSJ")
> are true and correct statements.
> 4. All the exhibits that are part of the MSJ are true and
> correct documents and accurately represent what they are
> purported to represent per the MSJ.

(Dkt. 50.)

An unsworn declaration must be subscribed to under penalty of perjury, be based

on personal knowledge, present facts that are admissible in evidence, and demonstrate

that the declarant is competent to testify about the matters stated. Burns's declaration

does none of the above, and as such, fails to comply with Rule 56(c), Fed. R. Evid. 602

and 901, and 28 U.S.C. § 1746. The Burns declaration is conclusory, does not lay a

proper foundation that the declarant has personal knowledge about any of the "facts" set

forth in the "factual summary" or the documents attached to the motion, and does not

actually contain factual statements admissible in evidence.

Furthermore, none of the documents are properly authenticated because they are

not attached to a declaration that meets the requirements of Fed. R. Civ. P. 56(c)(4).

---

[4] The exhibits are as follows: Exhibit A: Truck advertisement; Exhibit B: Bill of Sale; Exhibit C: text message; Exhibit D: Vehicle Information and unidentified text messages, letter, and other correspondence; Exhibit E: photograph; Exhibit F: Diagnostic Report and correspondence from Werner; Exhibit G: repair cost itemization; Exhibit H: Service Estimate from I-State Truck Center; Exhibit I: itemized list of "income deposits" and bank statements.

**MEMORANDUM DECISION AND ORDER - 8**

*Canada v. Blain's Helicopters, Inc.*, 831 F.2d 920, 925 (9th Cir. 1987) (unauthenticated documents cannot be considered on a motion for summary judgment). Nor has Burns established that he is the person through whom the exhibits could be admitted into evidence. *See id.* (The affiant "must be a person through whom the exhibits could be admitted into evidence.") (citing 10A C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 2722 at 58–60 (2d ed. 1983)).

The declaration of Dallas Henry fares no better. Henry identifies himself as the "expert witness for Plaintiff." (Dkt. 50-1.) He states he personally inspected and performed work on the Truck, by removing the ECM and CPC.[5] He claims that there is a 240,565 mile difference between the odometer and the CPC on the truck, and refers to the "Werner letter" as providing an explanation for the difference in mileage. Henry purports to authenticate the Werner letter, and Exhibits D, E, F, and H attached to the motion, by stating they are "true and correct documents," and that Exhibits D, E, F, and H "accurately represent what they are purported to represent per the MSJ." (Dkt. 50-1.)

First, the Henry declaration is not subscribed to under penalty of perjury. 28 U.S.C. § 1746. Next, the declaration fails to establish that Henry is competent to testify on the matters stated. *See* Fed. R. Civ. P. 56(c)(4). For instance, the declaration fails to explain Henry's qualifications to testify as an expert, and thus fails to satisfy Fed. R.

---

[5] CPC stands for Common Powertrain Controller and is the interface between the MCM and the vehicle/equipment functions like the odometer, gas and brake pedals, and fuel gauge. Truck ECM Computer Specialist, CPC4-Freightliner, https://truckecm.com/cpc4-freightliner-modules/#:~:text=CPC%20stands%20for%20Common%20Powertrain,the%20functionality%20of%20your%20truck; [https://perma.cc/TD2W-RAUA]

MEMORANDUM DECISION AND ORDER - 9

Evid. 702.[6] Next, the statements are conclusory. Finally, Henry fails to properly authenticate any of the documents referenced in the declaration. He is neither the recipient of nor the author of the Werner letter, which was sent by the Associate General Counsel for Werner Enterprises to Plaintiff's counsel. Therefore, Henry is not the person through whom the letter can be admitted into evidence. (Dkt. 47-4.) The statements made by the author of the Werner letter are hearsay. Fed. R. Evid. 801(c). As for Exhibits D, E, F, and H, it similarly does not appear that Henry is the person through whom the exhibits could be admitted into evidence.

Although Fed. R. Evid. 703 allows an expert to rely upon facts or data that would otherwise not be admissible in the formulation of an expert's opinions, it is not apparent that the Werner letter or Exhibits D, E, F, and H constitute documents that such an expert would "reasonably rely" upon, or that Henry actually relied upon them to formulate his opinions. *Turner v. B.N.S.F. Ry. Co.*, 338 F.3d 1058, 1061 (9th Cir. 2003) (Court must consider whether the facts are of a type reasonably relied on by experts in a particular field). In reaching this conclusion, the Court compared the statements in the Henry declaration to the opinions Henry expressed in his expert witness report. (*Compare* Dkt. 53-3 *with* 59-2.) Henry stated in his expert report that, in his opinion, and based solely upon observations he made during repairs of the Truck, the Truck had its emissions equipment illegally altered, and the Truck had been "flashed or had its engine control

---

[6] In an attempt to rehabilitate Henry's declaration, Burns submitted Henry's expert report, attached to Burns's response to the motion to strike. (Dkt. 59-2.) While the Court is arguably educated regarding Henry's qualifications to testify as an expert, the report raises a host of other issues, as the Court will explain.

**MEMORANDUM DECISION AND ORDER - 10**

module otherwise illegally changed….” (Dkt. 59-2.) Henry references no documents upon which he relied in forming the opinions set forth in the expert report. (Dkt. 59-2.)[7] *See, e.g., United States for use & benefit of Mountain Utilities, Inc. v. Fid. & Deposit Co. of Maryland*, No. 2:19-CV-00293-RCT, 2022 WL 1538707, at *9 (D. Idaho May 16, 2022) (report clearly identifies materials relied upon in formulating opinions). Similarly, none of the documents Henry seeks to authenticate via his declaration were relied upon in reaching the conclusions expressed therein. Rather, Henry simply states that the documents are “true and correct documents,” not that he relied upon them. Decl. of Henry ¶ 12. (Dkt. 50-1.) The Werner letter is described as providing an explanation for the mileage difference between the odometer and the CPC on the Truck, not as a document Henry relied upon to conclude there is a difference between the odometer and the CPC. *Id.* ¶¶ 9 – 11.

The opinions Henry articulates in his declaration are inadmissible for other reasons as well. First, it appears from the record that Henry was untimely disclosed as an expert. The expert witness report is dated May 4, 2023, and the expert witness disclosure is dated May 5, 2023. (Dkt. 59.) The deadline, however, for Burns to disclose the experts he intended to call at trial was April 28, 2023. (Dkt. 22.) Burns provided no explanation concerning the late disclosure of his expert, and thus the Court may properly exclude Henry’s opinions. *Christiansen v. Syverson*, 516 F. Supp. 3d 1151, 1154 (D. Idaho 2021).

---

[7] The only documents referenced are repair invoices, which summarized the work Henry performed on the Truck, and photographs of parts he removed during this work. (Dkt. 59-2.) But these documents do not form the basis for Henry’s opinions.

Nor was the report timely submitted with either Henry's declaration, or the motion for summary judgment. Fed. R. Civ. P. 56(c)(4). (Dkt. 47.) Burns gave no explanation for the untimely submission, as more fully discussed below. Finally, the statements Henry makes in the declaration exceed the scope of the opinions expressed in Henry's expert witness report. *Sherwood v. BNSF Ry. Co.*, No. 2:16-CV-00008-BLW, 2019 WL 943467, at *3 (D. Idaho Feb. 25, 2019) (opinions that do not elaborate upon opinions expressed in expert witness report may not be offered at trial).

Burns argues that the documents submitted in support of his motion for summary judgment should not be stricken, because they are "business documents" from the "respective businesses," and therefore have an "indicia of reliability," and are admissible pursuant to Fed. R. Evid. 803(6). (Dkt. 59.) He claims that both Burns and Henry properly authenticated the documents, because they have "personal knowledge" of the source of the documents, and either created them or received them.

Burns completely fails to understand how to properly authenticate business records such that they are admissible in evidence. To properly authenticate a business record, the custodian or a person with knowledge of the event or the record's creation must testify about the specific document and state that the document was recorded in the regular course of their business. Fed. R. Evid. 803(6); *Clark v. City of Los Angeles*, 650 F.2d 1033, 1037 (9th Cir. 1981) (explaining requirements to authenticate a business record). None of these requirements were met here. First, neither declaration contains a statement that either witness is familiar with the records in this matter, or how they came into possession of any of the documents. Second, neither declarant purports to be the

**MEMORANDUM DECISION AND ORDER - 12**

custodian of the records. Third, neither declarant purports to be someone familiar with the business from which the records were created, or explain that making the record was a regular practice of that business. Finally, neither declarant submitted a proper declaration under penalty of perjury.

Unauthenticated documents and declarations that do not adhere to the requirements of Fed. R. Civ. P. 56 and 28 U.S.C. § 1746 cannot be considered on a motion for summary judgment. *Canada*, 831 F.2d at 925. If a party fails to properly support an assertion of fact or fails to properly address an opposing party's assertion of fact, the Court may: "(1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials — including the facts considered undisputed — show that the movant is entitled to it; or (4) issue any other appropriate order." Fed. R. Civ. P. 56(e).

Here, the Koudelkas objected to the documents and declarations submitted by Burns, correctly pointing out the deficiencies and citing relevant authority that would have allowed Burns to correct his mistakes. Burns failed to do so. The Court is therefore not inclined to allow Burns another bite at the apple when the objections raised are a matter of hornbook law. The declarations of Burns and Henry, as well as Exhibits A – I, will not be considered. The Court's determination applies with equal force to Burns's attempts to introduce the same declarations and unauthenticated exhibits in opposition to the Koudelkas' motion for summary judgment. (*See* Dkt. 53.)

B.      **Plaintiff's Submissions are Untimely**

Koudelka objects also to the untimely submission of the declarations and

documents by Burns, specifically objecting to the submissions filed at Docket 49 and 50.

These filings include the declarations of Burns and Henry, the bench trial order in Utah

District Court Case No. 2:17-CV-0032-RJS-DBP captioned *Utah Physicians for a*

*Healthy Environment v.. Diesel Power Gear, LLC*, *et al*. (Dkt. 50-2), and the transcripts

of the remote depositions of Benny Burns and Jayce Koudelka. (Dkt. 50-3, 50-4.)

Koudelka also objects to Exhibits E, G, and I, because these documents were not

disclosed by Burns during the course of discovery.

The standard for amending the Court's scheduling order under Fed. R. Civ. P.

16(b)(4) is "good cause." Fed. R. Civ. P. 16(b)(4). This "good cause standard primarily

considers the diligence of the party seeking the amendment." *Crandall v. Hartford Cas.*

*Ins. Co.*, 2012 WL 6086598, at *2 (D. Idaho Dec. 6, 2012). At the heart of the inquiry are

"the moving party's reasons for seeking modification." *Johnson v. Mammoth*

*Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992).

However, because Burns filed the motion for extension after the expiration of the

deadlines for completion of discovery and for filing dispositive motions, Rule 6(b)(1)

also applies, which requires not only "good cause" to modify a scheduling order, but a

showing of "excusable neglect." Fed. R. Civ. P. 6(b)(1); *accord Harrison v. United*

*States*, 2021 WL 1269119, at *8 (D. Alaska April 6, 2021) (applying Rule 16(b) and Rule

6(b) to a motion for substitution of an expert). "Both Rule 6(b) and the case authorities

make clear that the showing needed to extend a pretrial deadline is more onerous the later

in the case it is made, and particularly so if made after a deadline passes." *Savage v. City of Twin Falls*, 2015 WL 12681319, at *7 (D. Idaho Jan. 20, 2015). An excusable neglect determination "is an equitable one that depends on at least four factors: (1) the danger of prejudice to the opposing party; (2) the length of the delay and its potential impact on the proceedings; (3) the reason for the delay; and (4) whether the movant acted in good faith." *Bateman v. U.S. Postal Serv.*, 231 F.3d 1220, 1123–24 (9th Cir. 2000).

"[T]he general rule is that a mistake of law does not constitute excusable neglect." *Kyle v. Campbell Soup Co.*, 28 F.3d 928 (9th Cir.1994). Misconception of a non-ambiguous rule cannot constitute excusable neglect to justify an extension of time. *Committee for Idaho's High Desert v. Yost*, 92 F.3d 814, 824 (9th Cir. 1996). While the United States Supreme Court has held that excusable neglect is a flexible and equitable concept based on the specific facts of each case, there is a limit on what can be considered excusable neglect. Specifically, the court stated that, "[a]lthough inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable' neglect, it is clear that 'excusable neglect' under Rule 6(b) is a somewhat 'elastic concept' and is not limited strictly to omissions caused by circumstances beyond the control of the movant." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd.*, 507 U.S. 380, 392 (1993).

Counsel for Burns offers no acceptable justification for his late submissions. Counsel's explanation: he was unfamiliar with Dist. Idaho Loc. Civ. R. 7.1, and his client and Henry did not return the declarations until after the June 30, 2024 filing deadline. Counsel admits also that he "found more evidence," but instead of responding to a

specific request for production, he simply produced documents with Burns's summary judgment motion. (Dkt. 54.) Counsel asks for a liberal interpretation of the rules, asserting that there has been no prejudice. This request goes too far.

Aside from the technical deficiencies of the submissions discussed above, which alone prevent their admission in support of Burns's motion for summary judgment, the Court does not find either good cause or excusable neglect. What is inexcusable is counsel's unfamiliarity with the Court's rules of practice and procedure. Rule 7.1 is not ambiguous. Neither are the rules governing discovery, requests for extension of time, and Rule 56. While the delay was not extensive, it was within the control of Burns's counsel, and was not caused by external forces. Although the Court does not find counsel for Burns acted in bad faith, this factor alone is an insufficient basis to grant relief when all other equitable factors and circumstances are considered by the Court.

Here, the Court finds the sole cause of the failure to timely file supporting declarations and other documents in support of Burns's motion for summary judgment was Counsel's unfamiliarity with Dist. Idaho Loc. Civ. R. 7.1, Fed. R. Civ. P. 56, and the rules of practice and procedure. Counsel has not presented a persuasive justification (or any justification) for his failure to familiarize himself with the applicable rules. Accordingly, the Court finds there are no equitable factors in this particular case that support deviating from the general rule that a mistake of law does not constitute excusable neglect. *See, e.g., Williamson v. Verrips*, No. CV05-131-S-EJL, 2005 WL 2077786, at *3 (D. Idaho Aug. 29, 2005) (mistaken reading of Fed. R. Civ. P. 56 and unfamiliarity with Dist. Idaho Loc. Civ. R. 7.1(c) did not constitute excusable neglect).

**MEMORANDUM DECISION AND ORDER - 16**

For all of the above reasons, the motion to strike will be granted, and the motion for extension of time will be denied. This leaves Burns without any materials supporting his motion for summary judgment.[8] Consequently, Plaintiff's Motion for Summary Judgment will be denied. Fed. R. Civ. P. 56(e)(4).

**2.      Defendants' Motion for Summary Judgment**

At the outset, the Court notes that Burns failed to respond to Defendants' motion with additional affidavits, declarations, or properly authenticated documents. Rather, Burns recycled the same declarations and unauthenticated documents filed in support of his own motion. (Dkt. 53.) As discussed above, the Court cannot consider these documents, or the statements made in the declarations. Accordingly, the Court considers Defendants' statement of facts as undisputed for purposes of their motion for summary judgment. (Dkt. 48-2.)[9]

**A.      *Undisputed Material Facts***

Jeffrey Koudelka is a pharmacist by profession, and in 2020 he decided to start a business, Koudelka Transport, LLC, with the intention of repairing and restoring trucks. Williams Decl. Ex. 3, Jeff Koudelka Dep. (Dkt. 48-6 at 2.) Jayce Koudelka is self-

---

[8] To the extent its holding is applicable to this case, the Court will consider *Utah Physicians for a Healthy Env't v. Diesel Power Gear, LLC*, 21 F.4th 1229, 1235 (10th Cir. 2021). There was no need to submit a copy of the written opinion in support of Burns's motion for summary judgment. If a case has some bearing on the matter under consideration before the Court, it can be cited to in the briefing. Notably, Burns failed to explain the significance of the opinion's holding in the briefing.

[9] Burns filed a "statement of disputed facts," but this document simply sets forth five statements made by Defendants in their statement of undisputed facts. (Dkt. 53-1.) Presumably, Burns disputes these statements, but he failed to present evidence refuting Defendants' factual assertions.

**MEMORANDUM DECISION AND ORDER  - 17**

employed and owns a tire business, located in Twin Falls, Idaho. Williams Decl. Ex. 2, Jayce Koudelka Dep. (Dkt. 48-5 at 2.)

The 2013 Freightliner ("the Truck") was the first vehicle that Koudelka Transport, LLC purchased to restore. (Dkt. 48-5 at 2; 48-6 at 2.) Koudelka Transport, LLC purchased the Truck for $6,500.00 on January 22, 2020, by being the successful bidder at the Insurance Auto Auction in Meridian, Idaho. (Dkt. 45-5 at 3; 48-6 at 2 – 3.) The notarized Bill of Sale reflected that Progressive Casualty Insurance Company was the seller of the Truck, and Seller's agent affirmed the odometer read "259,431 (no tenths) miles and to the best of my knowledge that reflects the ACTUAL [sic] of the vehicle described above…." Williams Decl. Ex. 1, Burns Dep. Ex. 5, Bill of Sale.[10] The Truck was a total loss and could not be driven on the roadway. (Dkt. 48-6 at 4.) Jayce assumed the miles on the Truck were lower than a lot of the trucks from that year because, after its wreck, it likely was sitting for a while before it was sold at auction. (Dkt. 48-5 at 5.)

Although neither Jeffrey nor Jayce had formal mechanical education or experience, both had worked on farm vehicles and restored cars. (Dkt. 48-5 at 2, 7; 48-6 at 2.) At the time the Koudelkas purchased the Truck, they did not have any experience working on or repairing semi-trucks. (Dkt. 48-5 at 2, 48-6 at 2.) Additionally, they did

---

[10] The referenced exhibit was not included with the Williams Declaration, although it was clearly referenced therein. Williams Decl. ¶ 2 (identifying Exhibit 1 as "true and correct excerpts and deposition exhibits from the deposition of Benny Burns, taken February 28, 2023."). (Dkt. 48-3.) The document was later filed as an errata. (Dkt. 63.)

not have any training or experience with ECMs[11] prior to purchasing the Truck. (Dkt. 48-5 at 2, 7; 48-6 at 2.)

Shortly after purchasing the Truck, Jeffrey arranged to have the Truck picked up and towed to his parents' home in Nampa. (Dkt. 48-6 at 4.) The Truck was parked in Nampa for approximately five to six months while Jeffery and Jayce sourced the necessary parts to repair the vehicle, and they worked on it in their spare time. (Dkt. 48-6 at 4.) Both Jeffrey and Jayce worked on repairs to the Truck. (Dkt. 48-5 at 3; 48-6 at 4.)

The Koudelkas purchased a second truck (the "parts truck") from which they were able to salvage parts to be used to repair the Truck. (Dkt. 48-6 at 4 – 5.) Most of the parts to repair the Truck came from the parts truck, but the Koudelkas separately purchase other parts. (Dkt. 48-6 at 6.)

The ECM was missing from the Truck when the Koudelkas purchased it, and the Truck would not start. (Dkt. 48-6 at 6.) Jeffrey took the ECM from the parts truck and installed it in the Truck. (Dkt. 48-5 at 3; 48-6 at 6.) Once the ECM from the parts truck was installed in the Truck, it started and "worked fine." (Dkt. 48-6 at 6.) *See also* Jayce Koudelka Dep. (once we "got the ECM from the parts truck…it started right up….") (Dkt. 48-5 at 3.)

---

[11] An ECM stands for Engine Control Module, which collects data from a variety of sensors and then adjusts fuel-to-air ratios, as well as controls engine timing. Truck ECM, ECM Meaning – What is an ECM and How Do I Know if it's Broken? https://truckecm.com/ecm-meaning-what-is-an-ecm-and-why-do-they-fail/#:~:text=ECM%20stands%20for%20Engine%20Control,well%20as%20controlling%20engine%20timing; [https://perma.cc/Q3T8-DFF4]

**MEMORANDUM DECISION AND ORDER - 19**

In addition to replacing the ECM, the Koudelkas replaced the steer axle and forward drive axle; replaced and painted the hood and bumper; replaced the OneBox[12] that had been damaged with the OneBox from the parts truck; replaced the DEF pump[13] with one from the parts truck; repaired the fuel control valve; and painted the exterior of the cab. (Dkt. 48-5 at 3 – 4; 48-6 at 5, 8.) Jayce Koudelka did not do a close inspection of the OneBox taken from the parts truck to see if it had been opened up before, and because it was working on the parts truck, he assumed it was "good to go." (Dkt. 48-5 at 7 – 8.) *See also* Jeff Koudelka Dep. ("And we also did replace the OneBox off of the wrecked truck. We never opened it."). (Dkt. 48-6 at 8.)

Once the Truck was running, the Koudelkas drove the Truck from Nampa to Carey, Idaho, to Jeffrey's residence. (Dkt. 48-5 at 3; 48-6 at 6.). Additional repairs were performed in Carey, Idaho. (Dkt. 58-6 at 4.) After the repair work was completed, the Koudelkas drove the Truck to an alignment shop in Twin Falls to verify if "everything was good," and to have it aligned before placing it up for sale. (Dkt. 48-5 at 4.) The Truck "ran beautifully." (Dkt. 48-6 at 8.)

The Koudelkas advertised the Truck for sale in May of 2021 on a For Sale site called Truck Paper, which posted the advertisement in a flier and on its website. (Dkt. 48-

---

[12]  A One Box is a compact assembly that consolidates the diesel oxidation catalyst, DPF, and selective catalytic reduction components into one integrated package, and provides emissions control and aftertreatment technology for diesel engines. DPF Alternatives, One Box, https://dpfalternatives.com/services/additional-services/one-box, [https://perma.cc/BER7-YEYE]

[13] A DEF pump supplies diesel exhaust fluid to the doser injector, so it can deliver the fluid in an atomized spray into the selective catalyst reduction chamber. The result is a reduction in oxides of nitrogen. Vehicle Service Pros, DEF Pump Diagnostics, https://www.vehicleservicepros.com/service-repair/the-garage/article/21202098/def-pump-diagnostics,[https://perma.cc/6KU6-N53L]

**MEMORANDUM DECISION AND ORDER  - 20**

5 at 4; 48-6 at 6.) The advertisement listed the mileage as 259,000, which was the same mileage as shown on the odometer of the Truck and on the notarized Bill of Sale. (Dkt. 48-5 at 4; 48-6 at 7.) Jeffrey and Jayce had no reason to believe that the mileage shown on the odometer was not the actual mileage of the Truck. (Dkt. 48-5 at 4; 48-6 at 7.)

On June 17, 2021, Burns contacted Jayce regarding the advertisement. (Dkt. 48-4 at 4; 48-5 at 4 – 5.) Jayce advised Burns that the Truck "was a salvaged title truck," and explained what had happened and where it was purchased from. (Dkt. 48-5 at 4 – 5.) *See also* Burns Dep. ("At the point when I bought this truck it was a salvaged title and everything was legal."). (Dkt. 48-4 at 3.)[14] Jayce also informed Burns that the Truck had been "wrecked," and that Jayce and his father, Jeffrey, bought the Truck, salvaged it, and repaired it. (Dkt. 48-4 at 4.)

Burns advised Jayce that he would be paying cash, so the salvaged title was not a problem. (Dkt. 48-5 at 4 – 5; Dkt. 48-4 at 7.) ("[H]e told me that the title had been totaled…it's cash on the totaled title….")  Jayce and Burns also discussed the mileage. (Dkt. 48-5 at 4); (Dkt. 48-4 at 4) ("I asked him about the mileage [and] if the truck was in good shape."); (Dkt. 48-4 at 6) ("[T]he fact that it had 259,000 miles was a big selling point, and I did ask him in the telephone conversation [on June 17]."). Burns asked Jayce to send him the VIN number of the Truck so Burns could do his own research. (Dkt. 48-5 at 5.)

---

[14] Burns claims that Jayce never used the word "salvaged," but that Jayce told him it was "wrecked" and "the title had been totaled." (Dkt. 48-4 at 4, 7.) Burns does not know if there is a difference between a "totaled title" and a "salvaged title." (Dkt. 48-4 at 9.)

**MEMORANDUM DECISION AND ORDER  - 21**

Burns arranged to meet Jayce in Carey, Idaho, on Friday, June 18, 2021, and arrived at approximately 1:45 p.m. (Dkt. 48-4 at 7.) Once Burns arrived in Carey, he had an opportunity to perform an inspection and test drive the Truck. (Dkt. 48-4 at 7 – 8.) On June 18, 2021, at 3:37 a.m., Burns sent a text message to Jayce Koudelka stating, "I am going to do some research on this!!! It's cash on a totaled title, so I need to check it further!!!" Burns Dep. Ex. 2, Text Messages. (Dkt. 63-1.)[15]

After Burns test drove the Truck, he had the opportunity to verify the mileage, and discovered that the mileage of 259,400 on the odometer did not match the mileage he pulled from the ECM, which was 500,000. (Dkt. 48-4 at 8.) Jayce advised Burns that the Truck did not have an ECM at the time it was purchased, and that an ECM was taken from another used vehicle and installed in the Truck. (Dkt. 48-4 at 8.) At that point, Burns advised Jayce, "Now I'm going to have to look into the mileage." (Dkt. 48-4 at 8.)

Burns wired the money for the purchase of the Truck to the Koudelkas at 5:46 p.m. on June 18, 2021. (Dkt. 48-4 at 8.) Burns discovered the mileage discrepancy between the odometer and the ECM prior to wiring the money to the Koudelkas. (Dkt. 48-4 at 9.) However, Burns did not investigate the mileage discrepancy until after the sale was complete. (Dkt. 48-4 at 9, 11.)

At no time on June 18, 2021, did the Koudelkas tell Burns he had to purchase the Truck or the deal was off. (Dkt. 48-4 at 9.) It was Burns's decision to purchase the Truck

---

[15] The referenced exhibit was not included with the Williams Declaration, although it was clearly referenced therein. Williams Decl. ¶ 2 (identifying Exhibit 1 as "true and correct excerpts and deposition exhibits from the deposition of Benny Burns, taken February 28, 2023."). (Dkt. 48-3.) The document was later filed as an errata. (Dkt. 63-1.)

without further investigation based upon his perception that the Koudelkas truthfully represented the condition of the Truck. (Dkt. 48-4 at 7.)

Burns stayed in Carey, Idaho, through the weekend, and drove the Truck back to Montana. (Dkt. 48-4 at 9; Dkt. 48-6 at 8, 10.) On June 21, 2021, Burns sent Jayce a text message asking Jayce if he was able to get an APU for the Truck, and requesting that Jayce do some custom work inside the cabin of the Truck. (Dkt. 48-4 at 10.) No mention was made in this text message of any issue with mileage or seeking rescission of the sale. (Dkt. 48-4 at 10; Dkt. 63-1.)[16]

On June 23, 2021, Burns texted Jayce mentioning concerns about the mileage of the Truck. (Dkt. 48-4 at 10 – 11.) Burns had obtained the mileage information, including information about the hubmeter and the ECM mileage, directly from Werner, the first owner of the Truck. (Dkt. 48-4 at 10 – 11.) Burns relayed to Jayce, "It's [the mileage] only on their computer system. It's not on anything else." (Dkt. 48-4 at 11.) Burns sent a text message to Jayce on June 25, 2021, stating he had spoken to "Nick at Nationwide Logistics" about the mileage, and was informed that, at the time of the accident, the Truck had 460,000 miles….The insurance company took the ECM!!!" (Dkt. 63-1.) Burns then requested a return of $35,000 from Jayce "because [Jayce] had not investigated the true mileage of the Truck." (Dkt. 48-4 at 10 – 11; Dkt. 63-1.) Based upon Burns's

---

[16] Burns texted Jayce on June 17, 2021, asking whether the Truck had an APU, and if Jayce would install one. (Dkt. 63-1 at 1.) On June 21, 2021, Burns asked again whether Jayce "might be able to get the APU, but I also need half of a cabinet removed and was hoping you could do that!!!"). (Dkt. 63-1.)

**MEMORANDUM DECISION AND ORDER  - 23**

research after the purchase of the Truck, he asked the Koudelkas to either rescind the transaction or return $35,000 of the purchase price. (Dkt. 48-4 at 11.)

The Truck did not have a hubmeter on it when the Koudelkas purchased it and it did not have a hubmeter on it when they sold it. (Dkt. 48-4 at 11; Dkt. 48-5 at 6; Dkt. 63-1.)

Burns spent $35,000 on repairs to the Truck, and it now runs well. (Dkt. 48-4 at 12.) Burns cannot say which repairs are related to the mileage versus repairs related to the emission control and other electronic equipment repairs, because he is not a mechanic and all he can do is guess. (Dkt. 48-4 at 12.) Burns affirms the Truck "does run good." Burns Dep. (Dkt. 48-4 at 12.)

Burns believes that the Kouldelkas relied on the Bill of Sale from Progressive. (Dkt. 48-4 at 13.)

Burns cannot say if he has suffered any adverse health effects as a result of his use of the Truck without seeking medical advice. (Dkt. 48-4 at 3 – 4.) He has not sought any medical advice. *Id.*

### B.    *Analysis*

#### i.    *Idaho State Odometer Violation* (*Second Cause of Action*)

Burns alleges a violation of Idaho Code § 49-1629, asserting that the Koudelkas had knowledge, or reason to believe, that the Truck's odometer had been turned back or replaced. Burns contends that the Koudelkas made verbal guarantees about the odometer mileage, and that Burns has suffered damages as a result.

Idaho Code § 49-1629(2)(b) makes it unlawful for any person to:

**MEMORANDUM DECISION AND ORDER  - 24**

> Sell a vehicle in this state if that person has knowledge that
> the odometer on the vehicle has been turned back or replaced,
> and if the person fails to notify the buyer prior to the time of
> the sale, that the odometer has been turned back or replaced,
> or that he has reason to believe that the odometer has been
> turned back or replaced.

The Court finds the Koudelkas have met their burden on summary judgment, and shown there is no genuine dispute as to any material fact. First, there is no evidence that the Koudelkas performed any work on the odometer itself.[17] Rather, the repairs to the Truck consisted of installing the ECM and the OneBox from the parts truck. Second, there is no evidence that, prior to the sale, the Koudelkas possessed any knowledge or reason to believe that the odometer had been turned back or replaced. The evidence is undisputed that the Koudelkas received a notarized bill of sale wherein an agent of Progressive certified that the mileage of 259,431 reflected on the odometer was correct, and reflected the actual mileage of the Truck. Burns believed the Koudelkas relied on the bill of sale.

Last, the only mention Burns made of the mileage prior to his purchase of the Truck related to the discrepancy between the ECM and the odometer. Burns noted the ECM registered 500,000 miles, which conflicted with the odometer. However, Jayce explained the discrepancy was likely because the ECM was taken from the parts truck and installed on the Truck — the Truck had no ECM when the Koudelkas purchased it. It was not until after the sale, on July 23, 2021, that Burns informed the Koudelkas that the mileage reflected on the odometer was likely incorrect. Thus, there is no evidence the

---

[17] *See* section vi, below.

**MEMORANDUM DECISION AND ORDER - 25**

Koudelkas had any knowledge prior to the sale that the odometer did not reflect the true mileage of the Truck.[18]

Burns has failed to make a showing that would establish the existence of an element essential to his claim. Therefore, the Court will grant summary judgment to Defendants on the second cause of action.

### ii.    *Fraud* (*Third Cause of Action*)

Burns claims that the Koudelkas represented the Truck would be suitable for use in long-haul trucking, and that the Truck had a total of 259,000 miles. He claims the Koudelkas knew these statements were false, with the intent that Burns rely upon them.

An actionable claim for fraud requires proof of the following elements by clear and convincing evidence:

> (1) a statement or representation of fact; (2) its falsity; (3) its materiality; (4) the speaker's knowledge about its falsity or ignorance of its truth; (5) the speaker's intent that there be reliance; (6) the hearer's ignorance of the falsity of the statement; (7) reliance by the hearer; (8) justifiable reliance; and (9) resultant injury.

*Choice Feed, Inc. v. Montierth*, 168 Idaho 124, 138, 481 P.3d 78, 92 (2021); *Samuel v. Hepworth, Nungester & Lezamiz, Inc.*, 134 Idaho 84, P.2d 303 (2000).

The Court finds the Koudelkas have met their burden on summary judgment, and shown there is no genuine dispute as to any material fact concerning an element of Burns's prima facie case. Crucially, there is no evidence that the Koudelkas

---

[18] While Jayce believed the mileage was low, he assumed that, because of the accident and the length of time the Truck was in his possession prior to its repair, it may have been inoperable for some time.

misrepresented material facts with knowledge of their falsity. The Koudelkas received a notarized bill of sale from an agent of Progressive, the Truck's prior owner, certifying the mileage reflected on the Truck's odometer was correct. There is no evidence that the Koudelkas had reason to believe the bill of sale did not accurately reflect the Truck's true mileage. It was only after the sale, on July 23, 2021, that Burns informed Jayce that the mileage of the Truck may be incorrect.

There is also no evidence that the Truck was not suitable for use in long-haul trucking. After repairing the Truck, the Koudelkas noted that the Truck ran well. Burns had an opportunity to test drive and inspect the Truck, and noted a "waving motion…causing a wobble" of the steering wheel for the front wheels. (Dkt. 48-4 at 7 – 8.) Jayce thought it was likely the tires, and he gave Burns a check for two new front tires. There is no evidence in the record that Burns was unable to drive the Truck for use in his long-haul trucking business. In fact, Burns testified in his deposition that, after he made additional repairs to the Truck, it ran well.

Burns has failed to make a showing that would establish the existence of an element essential to his claim. Therefore, the Court will grant summary judgment to Defendants on the third cause of action.

### iii.   Revocation (*Fourth Cause of Action*)

Burns's fourth cause of action for revocation pursuant to Idaho Code § 28-2-608 alleges that Burns was unable to inspect the emissions system or ascertain the true mileage of the Truck prior to its purchase. Burns claims he was induced to purchase the Truck based upon representations by the Koudelkas, and that his later discovery of the

**MEMORANDUM DECISION AND ORDER  - 27**

"nonconformities substantially impaired the value of the [Truck]." Compl. ¶ 80. Burns

seeks a "declaratory order that his oral and written notifications effectively revoked

acceptance" of the Truck. Compl. ¶ 85.

Idaho Code § 28-2-608 provides that:

> (1) The buyer may revoke his acceptance of a lot or
> commercial unit whose nonconformity substantially impairs
> its value to him if he has accepted it
>     (a)  on the reasonable assumption that its
> nonconformity would be cured and it has not been seasonably
> cured; or
>     (b)  without discovery of such nonconformity if his
> acceptance was reasonably induced either by the difficulty of
> discovery before acceptance or by the seller's assurances.
> (2)  Revocation of acceptance must occur within a reasonable
> time after the buyer discovers or should have discovered the
> ground for it and before any substantial change in condition
> of the goods which is not caused by their own defects. It is
> not effective until the buyer notifies the seller of it.

Revocation of acceptance is a remedy for breach of contract or warranty. *Griffith*

*v. Latham Motors, Inc*., 128 Idaho 356, 361, 913 P.2d 572, 577 (1996). When a buyer

revokes acceptance, the buyer returns the goods and receives a refund. *Id.*; Idaho Code §

28-2-711.

The Koudelkas argue that Burns cannot establish several elements essential to his

prima facie case. First, he cannot establish that his acceptance of the Truck was

reasonably induced by the difficulty of discovery of the mileage discrepancy. Second, the

Koudelkas assert that Burns did not ask for revocation within a reasonable time after

discovery. Finally, the Koudelkas note that Burns kept, altered, and used the vehicle after

the sale.

**MEMORANDUM DECISION AND ORDER  - 28**

Burns presents no evidence to refute the fact that the mileage discrepancy, and any other mechanical issue with the Truck, could not have been discovered easily prior to the sale. Jayce provided Burns the VIN number of the Truck on July 17, 2021, so that Burns could do additional research before purchasing the Truck. Burns affirmed that it was his decision to purchase the Truck despite knowing that it was a "totaled title", and that he was under no pressure from the Koudelkas to consummate the sale on July 18, 2021. Days after the sale, Burns was able to track down the original owner of the Truck, and he confirmed the odometer did not reflect the true mileage of the Truck. There is no explanation for why he was unable to do any investigation before he drove to Carey, Idaho on July 18, knowing then that the Truck had been repaired and had been "totaled."

Next, there is no concrete evidence in the record concerning when Burns asked for revocation of the sale. Rather, the evidence indicates that, on June 25, 2021, after learning of the true mileage of the Truck from Nationwide Logistics, Burns asked only for the return of $35,000.00.[19] There is no evidence Burns asked to revoke the sale at that time.

And last, Burns has made substantial alterations to the Truck. He admits he has spent $35,000.00 in repairs to the Truck, and he cannot say which repairs were a result of repairs to the emission control or other electronic repairs. (Dkt. 48-4 at 12.) Therefore, Burns cannot establish that there was no substantial change in condition of the Truck not caused by its own defects.

---

[19] The Truck was advertised for sale for $56,000.00. Compl. ¶ 13; Ans. ¶ 11.

Burns has failed to make a showing that would establish the existence of elements essential to his claim. Therefore, the Court will grant summary judgment to Defendants on the fourth cause of action.

iv.    *Implied Warranty of Merchantability* (*Fifth Cause of Action*)

Burns's fifth cause of action alleges a violation of Idaho Code § 28-2-314. He asserts that, as the sellers of long-haul semi-trucks, the Koudelkas impliedly warranted that the Truck would be merchantable, and that the Koudelkas breached the implied warranty of merchantability because the Truck does not comply with "numerous federal requirements." Specifically, Burns alleges that the modifications the Koudelkas made to the Truck "would prevent [the Truck] from passing without objection under the contract description." Compl. ¶ 89. Burns alleges that the modifications the Koudelkas made to the Truck make it unfit for the ordinary purposes for which the Truck was intended to be used. Compl. ¶ 90.

Idaho Code § 28-2-314 provides, in pertinent part, that:

> a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind….
> (2)  Goods to be merchantable must be at least such as
> (a)  pass without objection in the trade under the contract description; and…
> (c)  are fit for the ordinary purposes for which such goods are used….[20]

---

[20] When a buyer receives goods that do not conform to express or implied warranties, the buyer keeps the goods and may sue for the difference in value of the goods as received and the value of the goods as warranted plus, if proven, any incidental and consequential damages. *Griffith*, 913 P.2d at 577; Idaho Code § 28-2-714.

**MEMORANDUM DECISION AND ORDER  - 30**

The Koudelkas argue that the implied warranty of merchantability does not apply, because neither Jeffrey nor Jayce were "merchants with respect to" semi-trucks, citing to the assignment of title attached as Exhibit 4 to the Complaint. The assignment of title reflects that the seller of the Truck was Jeffrey Koudelka. Compl. ¶¶ 27, 30; Ans. ¶¶ 22, 24. (Dkt. 1, 1-4, 11.)[21] The Koudelkas assert that the Truck was the first such truck ever owned or sold by Jeffrey; he was not formally trained as an auto mechanic; and the Truck was not sold from a business location or shop.

Burns did not address the Koudelkas' arguments in his response to their motion for summary judgment, or in his own motion. (Dkt. 47, 53.)

For purposes of Article 2, a "merchant" is,

> a person who deals in goods of the kind or otherwise by his occupation holds himself out as having knowledge or skill peculiar to the practices or goods involved in the transaction or to whom such knowledge or skill may be attributed by his employment of an agent or broker or other intermediary who by his occupation holds himself out as having such knowledge or skill.

Idaho Code § 28–2–104(1).

Here, there is no evidence that the Koudelkas, or their LLC, held themselves out as in the business of repairing and selling semi-trucks. There is no advertisement, statement, or other evidence in the record that the Koudelkas represented themselves as sellers of semi-trucks or mechanics. Nor is there any evidence that the Koudelkas

---

[21] Koudelka denies that the Assignment of Title was signed in Jeffrey Koudelka's individual capacity, but otherwise does not challenge the authenticity of the Assignment of Title transferring title from Jefrey Koudelka to Burns.

**MEMORANDUM DECISION AND ORDER - 31**

possessed knowledge or skill peculiar to the repair of semi-trucks. *See Tri-Circle, Inc. v. Brugger Corp.*, 121 Idaho 950, 958, 829 P.2d 540, 548 (Ct. App. 1992) (finding all parties were merchants because they had "knowledge or skill peculiar to the practices or goods involved in the transaction."). Both Jeffrey and Jayce denied having any formal training in the repair of semi-trucks.

Burns has failed to make a showing that would establish the existence of an element essential to his claim. Therefore, the Court will grant summary judgment to Defendants on the fifth cause of action.

> v.   *Clean Air Act* (*Sixth Cause of Action*)

Burns alleges the Koudelkas violated 42 U.S.C. § 7522(a)(3)(A) of the Clean Air Act. This statute renders it unlawful for "any person to remove or render inoperative any device or element of design installed on or in a motor vehicle or motor vehicle engine in compliance with regulations under this subchapter prior to its sale and delivery to the ultimate purchaser…."  Persons who violate section 7522(a)(3)(A) "shall be subject to a civil penalty…." Private citizens may sue for any "violation of…an emission standard or limitation under [the CAA]." 42 U.S.C. § 7604(a)(1). No action may be commenced prior to 60 days after the plaintiff has given notice of the violation "(i) to the Administrator, (ii) to the State in which the violation occurs, and (iii) to any alleged violator of the standard, limitation, or order…." 42 U.S.C. § 7604(b)(1)(A)

Burns contends the Koudelkas violated section 7522(a)(3)(A) by removing and altering EPA mandated emissions limitations systems from the Truck, and are therefore

liable for a civil penalty of up to $5,179 for each such violation occurring on or after November 2, 2015. Compl. ¶¶ 94 – 98.

Koudelka asserts that Burns lacks standing to bring a citizen suit under the Clean Air Act, because citizen plaintiffs do not have standing to seek civil penalties for past violations. Further, Koudelka argues that Burns cannot identify any adverse health effects from the modifications to the Truck, as he sought no medical treatment. And last, Koudelka contends that the notice required by 42 U.S.C. § 7604(b) was not properly served.

A plaintiff has standing when "(1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Env't Servs.* (*TOC*)*, Inc.*, 528 U.S. 167, 180–81 (2000).

The Court finds the Koudelkas have met their burden on summary judgment and established that there are no disputed issues of material fact as to Burns's standing. There is no dispute that Burns did not suffer adverse health effects from pollution fairly traceable to the removal or alteration of EPA mandated emissions limitations systems from the Truck. *See, e.g., Utah Physicians for a Healthy Env't*, 21 F.4th 1229, 1241 (10th Cir. 2021) (upholding district court's determination that plaintiffs' members established standing because they suffered adverse health effects from the exposure to diesel exhaust). Burns has not sought any medical treatment related to the modifications to the

**MEMORANDUM DECISION AND ORDER - 33**

Truck. He is also currently using the Truck, having stated in his deposition that it runs well. Burns also failed to set forth any facts establishing standing in his own motion for summary judgment, and did not plead any factual allegations in the complaint to establish injury resulting from the Koudelka's conduct. (Dkt. 1, 47.)[22] Burns presented no evidence refuting his prior statements, and offered no argument in opposition. (Dkt. 53.)

Burns has failed to make a showing that would establish the existence of an element essential to his claim. Therefore, the Court will grant summary judgment to Defendants on the sixth cause of action.

> vi.    *Odometer Violation* (*Seventh Cause of Action*)

Burns alleges that the Koudelkas transferred the vehicle within the meaning of 49 U.S.C. § 32702, and in the course of such transfer, they made and signed false statements with reckless disregard for the truth as related to the odometer and mileage of the vehicle, in violation of 49 U.S.C. § 32705. Burns seeks damages pursuant to 49 U.S.C. § 32710, in the amount of $168,000.00, which is equivalent to three times the purchase price paid for the Truck.

The Motor Vehicle Information and Cost Savings Act (federal odometer act) prohibits tampering with motor vehicle odometers, and was established to provide safeguards to protect purchasers in the sale of motor vehicles with altered or reset odometers. 49 U.S.C. § 31701(b). It is unlawful for any person to "disconnect, reset,

---

[22] In the Complaint, Burns alleged only that his age and occupation cause him to be susceptible to negative health effects. Compl. ¶ 3. He did not plead that he in fact has suffered any health effects as a result of the Koudelka's conduct in removing or altering EPA mandated emissions limitation systems from the Truck. Compl. ¶¶ 93 – 99.

alter, or have disconnected, reset, or altered, an odometer of a motor vehicle intending to change the mileage registered by the odometer." 49 U.S.C. § 32703(2). Any physical documents used to reassign a title must contain the odometer reading at the time of the transfer, and a certification that the odometer reading reflects the actual mileage. 49 C.F.R. § 580.5(c)(1), (e)(1).

Any person may bring a civil action to enforce a claim under the statute, and a person that violates the act, "with intent to defraud, is liable for 3 times the actual damages or $10,000.00, whichever is greater." 49 U.S.C. § 32710(a), (b). A transferor of a motor vehicle with a Gross Vehicle Weight Rating of more than 16,000 pounds need not disclose the vehicle's odometer mileage. 49 U.S.C. § 32705(a)(1) – (5); 49 C.F.R. § 580.17(a)(1) (vehicles exempted); *Midwestern Motor Coach Co. v. Gen. Elec. Co.*, 289 F. App'x 958, 959 (8th Cir. 2008) (motor coach weighing over 16,000 pounds was exempt from the federal odometer act's mileage-reporting requirements, and therefore exempt from the statute's prohibition against giving false statements when making a required disclosure).

The Koudelkas argue that there are no facts establishing that they had knowledge that the odometer misrepresented the actual mileage, and therefore Burns has not established intent to defraud, an essential element of Burns's prima facie case. Further, the Koudelkas assert that the Truck is exempt from the statute's prohibition against giving false statements when making a required disclosure, because the Truck weighs over 16,000 pounds, and they did not waive their right to claim the exemption. In opposition, Burns relied solely upon his own memorandum in support of his motion for

summary judgment, and submitted no admissible evidence contesting the Koudelka's statement of undisputed material facts. (Dkt. 47, 53, 53-1.)

The Court finds the Koudelkas have met their burden on summary judgment and shown there is no genuine dispute as to any material fact. First, there is no evidence that the Koudelkas did anything to "disconnect, reset, alter, or have disconnected, reset, or altered" the odometer of the Truck with the intent to change the mileage registered by the odometer. There is no evidence that the Koudelkas performed any repair work to the odometer itself. *See In re Nissan N. Am., Inc. Odometer Litig.*, 739 F. Supp. 2d 1017, 1027 (M.D. Tenn. 2010) (Odometer act applies only to changes made to an odometer, and requires a change from its original condition). *See also Bodine v. Graco, Inc.*, 533 F.3d 1145, 1147 (9th Cir. 2008) (the Act prohibits "odometer tampering with the intent to change the mileage registered by the odometer.). Rather, the Koudelkas' repairs to the Truck consisted of installing the ECM and the OneBox from the parts truck. Since there is no evidence the Koudelkas made any post-acquisition alteration to the odometer itself, Section 32703(2) does not apply. *In re Nissan N. Am., Inc. Odometer Litig.*, 739 F. Supp. 2d at 1027.

Second, even if the Act did apply, there is no evidence the Koudelkas possessed the requisite intent to defraud. Where a plaintiff alleges a violation of 49 U.S.C. § 32703(2), there must be proof that the vehicle's transferor intended to defraud a transferee with respect to mileage. *Bodine v. Graco, Inc.*, 533 F.3d 1145, 1147 (9th Cir. 2008) (citing *Ioffe v. Skokie Motor Sales, Inc.*, 414 F.3d 708, 709 (7th Cir. 2005)). Koudelka LLC purchased the Truck at an auction from the seller, Progressive; an agent

of Progressive certified that the odometer read 259,431 miles, and that the odometer reflected the actual mileage of the vehicle. Burns understood that the Koudelkas relied on the bill of sale and the representation made by Progressive's agent on that same document. Indeed, buyers are entitled to rely on the odometer reading as an accurate indication of the mileage of the vehicle. 49 U.S.C. § 32701(2).

While Burns may have alerted the Koudelkas of his doubts about the mileage prior to wiring the money to purchase the Truck, there is no evidence that the Koudelkas had any knowledge that the mileage reflected on the bill of sale and the odometer did not represent the true mileage of the Truck until June 23, 2021, at the earliest. That is when Burns provided information to Jayce that Werner, the Truck's first owner, had a different mileage number in their computer system. Accordingly, the facts are undisputed that the Koudelkas did not possess the intent to defraud Burns as to the Truck's mileage.

Finally, as to the Koudelkas' last assertion that the Act does not apply because the vehicle's weight exceeds 16,000 pounds, the record contains no evidence as to the Truck's gross vehicular weight.[23]

Burns has failed to make a showing that would establish the existence of elements essential to his claim. Therefore, the Court will grant summary judgment to Defendants on the seventh cause of action.

---

[23] Despite the lack of evidence, it would seem to be common knowledge that a semi-truck would exceed 16,000 pounds. *See, e.g.*, https://www.thetruckshop.net/inventory/2013-freightliner-cascadia-125-6/ [https://perma.cc/WH3N-72NQ] (listing a 2013 Freightliner Cascadia 125 for sale, with a GVW of 52,000 pounds).

**MEMORANDUM DECISION AND ORDER - 37**

## CONCLUSION

Defendants' motion for partial summary judgment will be granted, and Plaintiff's motion will be denied. That leaves only Burns's first cause of action, which alleges a violation of the Idaho Consumer Protection Act, remaining for trial. This cause of action is brought pursuant to state law. Upon the dismissal of claims arising under federal law, the only remaining basis for the Court's jurisdiction is diversity of citizenship under 28 U.S.C. § 1332. Burns did not allege diversity as a basis for the Court's jurisdiction in the Complaint. Compl. ¶ 9.

While it appears that there is diversity of citizenship between all remaining Defendants and Burns,[24] it is not apparent from the Complaint that the $75,000.00 amount in controversy requirement is satisfied with regard to the first cause of action. 28 U.S.C. § 1332. At numerous times throughout his deposition, Burns indicated that repairs to the Truck that he undertook as a result of the mileage discrepancy and faulty electronics systems did not exceed $35,000.00.[25]

Accordingly, the Court will require additional briefing as to whether the Court possesses jurisdiction under 28 U.S.C. § 1332, and if not, whether the Court should, in its discretion, exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over the remaining state law claim.

---

[24] The Complaint avers that Burns resides in Montana, while Jayce and Jeffery, the sole members of Koudelka Transport, LLC, reside in Idaho. Compl. ¶¶ 1, 4 – 6.

[25] The Idaho Consumer Protection Act limits recovery to "actual damages or one thousand dollars ($1,000), whichever is greater," and reasonable attorney's fees. Idaho Code § 48-608(1), (5).

**MEMORANDUM DECISION AND ORDER  - 38**

## **ORDER**

**NOW THEREFORE IT IS HEREBY ORDERED:**

1)     Plaintiff's Motion for Summary Judgment (Dkt. 47) is **DENIED**.

2)     Defendants' Motion for Partial Summary Judgment (Dkt. 48) is

       **GRANTED**.

3)     Defendants' Motion to Strike (Dkt. 51) is **GRANTED**.

4)     Plaintiff's Motion for Extension of Time (Dkt. 54) is **DENIED**.

5)     The parties are to submit briefing addressing whether Plaintiff's remaining

       cause of action meets the amount in controversy requirement of 28 U.S.C. §

       1332 such that the Court has diversity jurisdiction, and if not, whether the

       Court should, in the exercise of its discretion, retain jurisdiction under 28

       U.S.C. § 1367. Plaintiff must file an opening brief on or before **November

       25, 2024**; Defendants must file a response by **December 16, 2024**; and

       Plaintiff may file a reply by **December 31, 2024**. Any declarations or

       affidavits filed by the parties must meet all applicable evidentiary and other

       rules or statutes, and documents must be properly authenticated.

Dated: **October 24, 2024**

Candy W. Dale
United States Magistrate Judge